Glennon, J.
Plaintiff as assignee-lessee of Pier New 34 North Eiver instituted this action to recover the cost of alterations and repairs to the pier made by it. The action is based upon an agreement under which it is alleged the city obligated itself to bear the expenses of the work. We are here concerned only with the sufficiency of the two counterclaims interposed by the city, and not with the sufficiency of the complaint.
The first counterclaim recites that the Clyde Steamship Company, plaintiff’s predecessor in interest, leased Pier New 34 from the city under a written agreement dated May 20, 1929; that part of the annual rental was to be computed upon the total area of under-water land demised under the lease; that pursuant to the provisions of a supplemental agreement made on November 8, 1933, the city authorities modified the aforesaid lease by permitting the lessee to occupy the entire demised area of 487,248 square feet but eliminating 170,652 square feet from the rental calculation, thereby reducing the annual rent payable by $57,633.45; and that plaintiff as assignee of the lease from Clyde has been paying the reduced rent as fixed in the supplemental agreement for each of the eleven years the lease has already run.
It is the contention of the city that the supplemental agreement was void under article VIII, section 1, of the Constitution *198 of the State of New York and, therefore, it asks judgment against the plaintiff for $639,731.30, representing the difference between the rental provided for in the original agreement and that fixed in the supplemental agreement for the eleven-year period.
The second counterclaim sets forth in substance the same allegations as the first and in addition thereto states that under the provisions of the lease of May 20, 1929, part of the rental was to be computed upon the cost of construction; that pursuant to the supplemental agreement of November 8, 1933, the cost of leveling the pier deck was made a claim against the city instead of being charged as part of the cost of construction ; that such allocation had the effect of reducing the rent from that fixed in the original lease without any legal consideration; and that the supplemental agreement is therefore void under article VIII, section 1, of the Constitution and the city is entitled to recover $9,435.33, representing the total amount of the rent reduction effected by the provisions of the supplemental agreement for the eleven-year period here involved.
The counterclaims do not charge bad faith, fraud.or collusion on the part of plaintiff’s predecessor in interest or of the officials who represented the city. In effect' the city- merely asserts that the differences which it seeks to recover under the counterclaims constitute gifts prohibited by section 1, article VIII of the Constitution, which provides in part that “ No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking ”.
After considering the documents incorporated into the counterclaims and giving the allegations of the counterclaims every fair intendment, we find that they fail to set forth facts sufficient to make out any cause of action.
The ten-year term granted by the lease of May 20, 1929, was not to commence until the completion of the pier, sheds and dredging. The construction of the pier and the dredging was to be done by the city. The lessee undertook to erect at its own expense a one-story shed on the pier and a two-story shed on the bulkhead at an estimated cost of $800,000. By October, 1933, the pier was not ready for occupancy due to the delay in the performance of the portion of the work undertaken by the city. The lessee had completed and paid for the construction of the sheds but it could not complete the surfacing of the deck of the pier until after certain faulty construction of the pier proper by the city’s contractor had been corrected. Up to that time the city had been unable to procure its contractor to remedy *199 the condition and for financial reasons it was unable to complete the dredging required.
Under such conditions the lessee on October 6, 1933, offered to undertake the dredging and correction of the pier deck and to advance the funds necessary for the work. The cost of the dredging was estimated to be $156,000, and the correction of the deck level between $10,000 and $11,000. The lessee also offered to release the city from any and all claims for damages sustained arising out of the delay. In return it requested a modification of the rent provisions of the lease by eliminating from the total number of square feet upon which the rental was to be computed, the area of under-water land subject to the permanent easement for the Holland Tunnels underneath the pier.
The lessee’s offer was taken under advisement by the city officials and a resolution was duly adopted by the Board of Commissioners of the Sinking Fund authorizing the Commissioner of Docks to execute a modification of the lease. Pursuant to the authority thus granted the Commissioner of Docks entered into the supplemental agreement on November 8, 1933, reducing the rent payable under the original agreement in consideration of the lessee’s release of the city from all claims against it and the undertaking by the lessee of the completion of the pier with funds to be advanced by it.
On November 15, 1933, the lessee commenced the dredging and completed all of the work by January 9, 1934, from which date rent began to accrue to the city.
We are of the view that the supplemental agreement was a business transaction entered into by the city in its proprietary capacity and since it was made for a valid and legal consideration it did not come within the prohibition of article VIII, section 1, of the Constitution of the State of New York.
Having reached the conclusion that the counterclaims are without foundation in law, it becomes unnecessary to take up that branch of the motion which has to do with the statute of limitations.
Accordingly the order appealed from should be reversed, with $20 costs and disbursements to the appellant, and the motion to dismiss the counterclaims as insufficient in law granted.
Mastín, P. J., Townley and Callahan, JJ., concur.
Order unanimously reversed, with $20 costs and disbursements to the appellant, and the motion to dismiss the counterclaims granted.